**SAMSUNG ELECTRONICS AMERICA, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 99–1288.**

United States Court of Appeals, Federal Circuit.

Nov. 5, 1999.

Thomas J. Kovarcik, of New York, New York, argued for plaintiff-appellant. With him on the brief was Irving A. Mandel.

Bruce N. Stratvert, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, Department of Justice, of New York, New York, DC, argued for defendant-appellee. With him on the brief were David G. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Department of Justice of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office.

Before MAYER, Chief Judge, MICHEL and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

Samsung Electronics America, Inc. ("Samsung") appeals from the summary judgment of the United States Court of International Trade in *Samsung Electronics America, Inc. v. United States*, 35 F.Supp.2d 942 (C.I.T.1999), holding Samsung not entitled to an allowance in the appraised values and refund of duties on entries liquidated by the United States Customs Service ("Customs") from December 1987 through October 1990. Samsung alleged that the entered merchandise contained latent defects covered by its consumer warranties, and it sought allowances for the repair costs and losses of unrepairable goods sold at discount during the years of the entries, arguing that these goods were "partially damaged" upon importation, under 19 C.F.R. § 158.12. The Court of International Trade held that Samsung failed to establish with the legally required specificity the value of the defects in each entry so as to entitle it to an allowance and refund of duties pursuant to reliquidation and reappraisal. The appeal was submitted for our decision following oral argument on October 6, 1999. Because the Court of International Trade correctly interpreted and applied the regulation, we affirm the summary judgment. We hold that under section 158.12, in order to qualify for an allowance in appraised values, the importer's proof must relate the allowance sought to each particular entry. Samsung's proofs did not even purport to do so, reflecting only annual repair costs, and not the diminution in value of individual entries. The repair costs and losses covered the same years as those in which the protested entries occurred, but were not limited to equipment entered in those years and could have included considerable costs for equipment imported in

earlier, non-protested entries. Thus, these costs were not proven to be related with adequate specificity to particular entries as required by section 158.12. Therefore, we must affirm the judgment.

## BACKGROUND

Samsung imported various types of electronic equipment manufactured by its parent company, Samsung Electronics Co., Ltd. ("manufacturer"), in Korea between December 1987 and October 1990. Samsung then resold the equipment bearing both companies' brand name SAMSUNG to consumers in America.

Customs assessed duties on each entry protested here based on the "transaction value" of the imported equipment, which is only one of several methods of appraisal used by Customs. This transaction value was determined using the price actually paid by Samsung when it purchased the equipment from the manufacturer, as provided in 19 U.S.C. § 1401a (1994).

As part of the sales contracts, Samsung and the manufacturer entered into Servicing Agent Agreements ("service agreements"), which acknowledged that "the Products exported to the United States are occasionally in need of the inspection, repair, refurbishing, and such other customer requested services." The service agreements obligated the manufacturer to reimburse Samsung up to 5% of the total purchase price per year for the cost of these inspections, repairs and refurbishings.

During the time covered by these sales contracts and service agreements, but after liquidation of the entries, certain electronic equipment like that imported in the subject entries was found to contain latent defects. Samsung either sold the equipment containing such manufacturing defects at a discount and with the SAMSUNG label removed, or repaired it in the United States, either before sale or under the consumer warranties covering defective equipment, when consumers returned the equipment to Samsung as defective. Samsung's cost accounting system kept track of these losses and repair costs on an annual basis. When consumers asserted their rights under their consumer warranties with Samsung, if the defects were determined to have not been caused by the consumer and to be covered by the warranty, the defects were repaired and the expenditures were considered repair costs in Samsung's accounting system. Samsung (in America) asserted its rights under the service agreements and the manufacturer (Samsung in Korea) reimbursed Samsung (in America) for its losses incurred in the discounted sales and the costs incurred to repair the defects. This reimbursement was equal to 4.7% of the total purchase price for the period in question.

Samsung filed claims with Customs under what are now 19 C.F.R. § 158.12 and 19 U.S.C. § 1401a(b)(3)(A)(i) for the valuation of the defective merchandise and, consequently, the duties assessed, to be reduced by a reasonable allowance for the diminished value due to the latent manufacturing defects. Customs rejected both Samsung's claims and its subsequent protests. *See Samsung Electronics America, Inc. v. United States*, 106 F.3d 376, 378 (Fed.Cir.1997). Samsung then brought the instant action in the Court of International Trade. The court granted the government's first motion for summary judgment, denying Samsung's claims for duty refunds. The Court of International Trade determined that the regulation applies only to unexpectedly defective merchandise, i.e., merchandise different from that which was ordered, and that Samsung had ordered merchandise expecting a certain level of defects and therefore the merchandise received, defects and all, was what they ordered. On appeal, we held, however, that "Samsung ordered only defect-free merchandise and ... these sales contracts call for *only* defect-free merchandise." *Samsung*, 106 F.3d at 379. This court, therefore, reversed the Court of International Trade's summary judgment that 19 C.F.R. § 158.12 cannot apply to the subject entries and remanded the case for a determination of the "allowance

[to be] made in the value to the extent of the damage." 19 C.F.R. § 158.12. This court noted that only those defects proven to have been in existence at the time of importation qualified for an "allowance" in value. *Se e* Samsung, 106 F.3d at 380 n. 4.

The Court of International Trade, on remand, found that Samsung could not "establish either the existence of latent defects in the subject entries with any specificity or the value of such claimed defects," and again granted summary judgment to the government. *Samsung*, 35 F.Supp.2d at 944. Samsung again appealed.

We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

### I.

Samsung seeks a partial refund in duties under 19 U.S.C. § 1401a[1] via a belated allowance under 19 C.F.R. § 158.12,[2] which requires an appraisal of the partially damaged merchandise that reflects the value of the defects. The Court of International Trade held that an importer is entitled to this allowance in dutiable value only when the particular entry for which the allowance is sought and the diminution in value of the merchandise so entered can be established with specificity. *See Samsung*, 35 F.Supp.2d at 949. The trial court further held that Samsung's evidence utterly failed to correlate the diminution in value of the damaged goods to the specific entries for which the allowances were sought. *See id.* Samsung argues on appeal that its proof of repair costs was legally sufficient to prove that the latent defects at issue here existed at the time of importation, the degree of damage the protested entries had incurred and, therefore, what allowance should be granted Samsung in the appraised value of the entry. The issue, then, is what an importer must prove to obtain such an allowance.

As this court specifically noted in our previous opinion, Samsung bore "the burden of proving ... that the costs to repair defects under consumer warranties were incurred to repair defects in existence at importation." *Samsung*, 106 F.3d at 380 n. 4. The only evidence that was provided by Samsung, however, consisted of an affidavit of Kang Bae Park, the Tax and Accounting Senior Manager at Samsung, in which he alleged, in wholly conclusory fashion, that all the defects existed at the time of importation,[3] and set forth Samsung's annual repair costs for the years in which the entries were made.

The government argues that this evidence fails to prove that any defects repaired under the warranties existed at the time the items were entered and, in fact, the defects could have occurred at any time during the warranty period, possibly long after the item was imported. The Court of International Trade determined that the evidence showed only what the annual repair costs paid by Samsung were, and did not prove that the asserted repair

---

1. 19 U.S.C. § 1401a details how the value of imported merchandise should be appraised.

2. 19 C.F.R. § 158.12(a) reads as follows:

   Merchandise partially damaged at time of importation.
   (a) Allowance in value. Merchandise which is subject to ad valorem or compound duties and found by the port director to be *partially damaged at the time of importation shall be appraised in its condition as imported,* with an allowance made in the value to the extent of the damage. However, no allowance shall be made when forbidden by law or regulation; for example, Chapter 72, Additional U.S. Note 3, Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202), provides that no allowance or reduction of duties for partial damage or loss in consequence of discoloration or rust occurring before importation shall be made upon iron or steel or upon any article of iron or steel.
   (emphasis added).

3. Park's precise words were:

   Because Samsung's merchandise was manufactured outside of the United States, and imported into the United States, all latent manufacturing defects in the merchandise, although discovered after importation, must have existed, and did exist, at the time of importation.
   Park Aff. ¶ 3, J.A. at 41.

costs involved only goods entered after December 1987. The government, therefore, argues that Samsung has failed to identify which entry has been reduced by what value, and therefore, what the allowance should be on each entry, as any allowances must be directly related to the appraisal of each entry. Therefore, according to the government, Samsung's figures, covering only the repair costs and losses for the years of the entries at issue and not the individual entries, cannot as a matter of law prove that Samsung qualifies for an allowance, much less what the allowance is.

▌ We agree with the Court of International Trade that Samsung's evidence proves only that at least some of the merchandise Samsung imported between 1987 and 1990 contained latent defects upon importation. We further agree that Samsung has failed to establish which of the subject entries contained merchandise with latent defects at the time of importation and what their reduced value was. Samsung's proof establishes no more than that *some* merchandise was defective. It does not clearly indicate *which* entries contained merchandise that was defective, or the value of the defects of a given entry. Under *Alyeska Pipeline Service Co. v. United States*, 10 CIT 510, 643 F.Supp. 1128 (1986), *reh'g granted*, 683 F.Supp. 817, 11 CIT 931 (1987), *vacated as moot on other grounds*, unpublished order (May 19,

1988), Customs is not allowed to "assign one entry the values of merchandise in other entries or the duties owing them." *Alyeska*, 10 CIT at 516, 643 F.Supp. at 1132.[4]

▌ We, therefore, agree with the Court of International Trade's decision, and interpret 19 C.F.R. § 158.12 to require Samsung to prove that a specific entry contained defective merchandise and what the allowance in appraised value for each such entry should be. Section 158.12 specifically states that the entered merchandise is to be "appraised in its condition as imported." Customs appraises the value of each entry as of the time of importation and assesses a duty based on this appraisal before it liquidates the entry. We, therefore, hold that section 158.12 requires the value for defects or damage to be associated with the entry appraised, so any refund on duty paid can be determined based on the specific entry at issue. It is legally insufficient to prove the repair costs, for example, for 1988 *in toto*, without correlation to particular entries in 1988.[5]

**II.**

▌ Samsung argues that it uses "generally accepted accounting principles" ("GAAP") in maintaining costs on an annual basis, and that 19 C.F.R. § 158.12 cannot require more detailed records because under 19 U.S.C. § 1401a(g)(3)[6] importers

---

**4.** We note that in *Alyeska*, as opposed to the situation here, Customs assessed the duty on twenty-one entries by extrapolating the value of the merchandise from one entry to the twenty other entries, whereas here Samsung asks Customs to interpolate the annual costs to each entry imported. The Court of International Trade held that 19 U.S.C. § 1500 provided for separate, unitary appraisal of entries and that a "value adjustment to imported merchandise may be reflected only on the entry or entries which cover the imported merchandise." *Alyeska*, 10 CIT at 516, 643 F.Supp. at 1132–33. Although the Court of International Trade relied heavily on *Alyeska*, we are not extending the rule of *Alyeska* to apply to ·the instant case, because, arguably, Samsung is seeking a value adjustment on the entries which cover the imported merchan-

dise, but simply has not identified these entries with sufficient specificity. Instead we look to *Alyeska* as one more aid in understanding the proper interpretation of this Customs regulation.

**5.** This is especially so because, as discussed *supra*, the 1988 repair costs could involve equipment imported by Samsung in previous years in entries not protested here.

**6.** Customs appraises all entered goods upon importation pursuant to 19 U.S.C. § 1401a(g)(3), which states in relevant part:

[I]nformation that is submitted by an importer, buyer, or producer in regard to the appraisement of merchandise may not be rejected by the customs officer concerned

are only required to follow GAAP. However-er, as the statute itself states, there are different sets of GAAP and the "applicability of a particular set ... depend[s] upon the basis on which the value of the merchandise is sought to be established." 19 U.S.C. § 1401a(g)(3). Appraisal, as we noted above, must be done on an entry-by-entry basis, . and therefore any set of GAAP for annual bookkeeping will not be applicable to the entry-by-entry basis on which the merchandise is appraised. We conclude that the set of GAAP employed by Samsung, i.e., annual cost accounting, is not applicable to this regulation and more specific proof is necessary, which may be obtained and offered under a different set of GAAP. Here, appraised value of imported goods was based on transaction value (plus adjustments not relevant here), i.e. sales price, which is inherently entry-by-entry and hence requires an entry-by-entry method of accounting. Thus, annual accounting cannot suffice.

Even if the annual accounting system is applicable for certain purposes because it is a set of GAAP, it does not mean that the burden of proof to qualify for an allowance in appraisal value has been satisfied under this regulation, which has its own evidentiary requirements. Under different fact scenarios the Court of International Trade has previously stated that "value comparisons using allocations of costs verified and in compliance with GAAP do not necessarily provide the Court with accurate information with respect to the import statute in the U.S.," *VWP of America, Inc. v. United States*, 980 F.Supp. 1280, 1287 (C.I.T.1997), *vacated on other grounds*, 175 F.3d 1327 (Fed.Cir.1999), and "the Court declines to hold that adherence to GAAP is dispositive for determining the appraisement of an assist." *Merck, Sharp & Dohme Int'l v. United States*, 915 F.Supp. 405, 411 n. 5 (C.I.T.1996).

Our interpretation of 19 C.F.R. § 158.12 requires the allowance sought to be specifically tied to the value of the damaged or defective merchandise as appraised on an entry-by-entry basis. Samsung has provided no proof whatsoever of the entry-by-entry repair costs and losses. Indeed, it asserts that it is not capable of providing any such proof. Samsung's proof of annual losses, repair costs and import duty assessments for the years 1987 to 1990 is insufficient to prove that every item repaired during these years contained manufacturing defects present at importation, and furthermore that every item so repaired was imported in the entries challenged here. The majority of the warranties covered the equipment for between ninety days and one year, but at least one warranty covered a particular part for eight years. If an item covered under the eight year warranty was repaired in 1988, it could have been imported at any time from 1980 until 1988, but the only entries for which Samsung protested and for which it now requests allowances were entered between December 1987 and October 1990. Thus, it cannot be determined whether that repair cost should be reflected in the appraisal for an entry in 1988. Samsung must be able to prove that the allowance requested is connected with the specific entry for which it is sought. As the Court of International Trade correctly held, "without some more concrete temporal connection between the subject entries, and the submitted warranty costs, only vague assumptions can be made about the appropriate allowance for the defects in subject entries." *Samsung*, 35 F.Supp.2d at 948–49. There is no other way to ensure that the allowance sought on an entry is commensurate with the costs and losses incurred for the merchandise entered. Therefore, summary judgment was appropriate as there can be no

on the basis of the accounting method by which that information was prepared, if the preparation was in accordance with generally accepted accounting principles.... The applicability of a particular set of gen-erally accepted accounting principles will depend upon the basis on which the value of the merchandise is sought to be established.

genuine issues of material fact and under the regulation as properly construed the government is entitled to judgment.

## CONCLUSION

The summary judgment in favor of the government, holding that Samsung failed to prove the amounts of the requested allowances on an entry-by-entry basis, as required by 19 C.F.R. § 158.12, is therefore,

*AFFIRMED.*